557 So.2d 1015 (1990)
Willie JONES
v.
John THOMAS, XYZ Insurance Company, and The City of New Orleans.
No. 89-CA-0665.
Court of Appeal of Louisiana, Fourth Circuit.
February 15, 1990.
*1016 Robert E. Kerrigan, Jr., Melanee A. Gaudin, Charles P. Carriere, III, Deutsch, Kerrigan & Stiles, New Orleans, for defendant/appellee Audubon Park Com'n.
William A. Ranson, III, Hanemann and Associates, New Orleans, for defendant/appellee Puritan Ins. Co.
Bruce G. Whittaker, Asst. City Atty., Val K. Scheurich, III, Deputy City Atty., William D. Aaron, Jr., Chief Deputy City Atty., Okla Jones, II, City Atty., New Orleans, for appellee City of New Orleans.
Gregory P. Di Leo and A.J. Capritto, New Orleans, for appellant.
Before LOBRANO, PLOTKIN and BECKER, JJ.
LOBRANO, Judge.
This appeal arises out of a suit brought by plaintiff-appellant, Willie Jones (Jones) against defendant-appellees, John Thomas (Thomas), the City of New Orleans (the City), the Audubon Park Commission (the Commission) and Puritan Insurance Company (Puritan), comprehensive general liability insurer for the Commission, as a result of personal injuries Jones received when he was punched in the jaw by Thomas at their place of employment, Audubon Park.
Following trial on the merits, the court ruled in favor of Jones finding that the conduct of the parties was clearly related and attributable to their employer's (the Commission and the City) business and occurred during regular working hours thus the intentional striking of Jones by Thomas "brings this action in tort." Under the facts and circumstances of the case the trial court found the Commission and the City vicariously liable for Thomas' intentional tort (battery) of Jones. The trial court awarded Jones damages in the amount of $10,000.00. He mitigated the award by assessing 90% fault against Jones finding that his "verbal abuse" of Thomas and his "overall action" precipitated the incident and brought about his injury.
Thomas was held liable for the remaining 10% with the City and the Commission being vicariously liable.[1] The trial court dismissed Puritan holding that the exclusionary language of the policy applies to a claim for "bodily injury to any employee of the insured arising out of and in the course of his employment by the insured. Coverage for bodily injury to plaintiff would be covered by a policy for worker's compensation, and not by Puritan's comprehensive general liability policy."
FACTS:
On October 21, 1980, Jones and Thomas, employees of the Commission were engaged in grass mowing operations on the grounds of Audubon Park. Thomas was acting supervisor of the crew in the absence of the regular supervisor, James Logan. At approximately 10:30, Thomas announced break time. The crew, with the exception of Jones, stopped work and took their break without complaint. Jones refused to take a break stating that Thomas was not his supervisor and couldn't tell him what to do. An argument erupted between the two men. Jones used rank profanity and threats of physical violence toward Thomas. Within minutes James Logan, the crew supervisor arrived with water for *1017 the crew. Logan heard Jones yelling and cursing at Thomas. Logan ordered the men to stop arguing and return to work. Thomas obeyed and proceeded to walk back towards his push mower. Jones, however, continued his verbal assault toward Thomas. He escalated his threats of violence and obscenities. Logan ordered Jones to leave Thomas alone and resume work. Jones continued yelling obscene language and threats at Thomas for an additional five to six minutes. Finally Jones threatened to kill Thomas' mother and family.[2] With this threat, Thomas lost control. He ran back towards Jones and punched him in the face. Jones sustained a broken jaw and was sent home. Thomas, a probationary employee with less than six months on the job, was terminated.
Jones appeals the trial court's judgment asserting the following assignments of error:
1) The trial court erred in mitigating his [Jones'] damages by 90% based upon mere words,
2) The trial court erred in holding that Puritan Insurance Company did not provide insurance coverage for this type of claim because the policy excluded coverage for bodily injury to any employee arising out of and in the course of employment by the insured.
ASSIGNMENT OF ERROR 1:
It is well established in Louisiana that provocative words alone cannot justify the more egregious act of battery. Johnson v. Dixon, 457 So.2d 79 (La.App. 4th Cir.1984) writ denied 462 So.2d 196 (La.1984). Mere words, even if designed to excite or irritate do not excuse a battery. Morneau v. American Oil Company, 272 So.2d 313 (La.1973); Johnson v. Dixon, supra.
It is equally well established, however, that words calculated to provoke and arouse to the point of physical retaliation may serve to mitigate damages in a suit for battery. Munday v. Landry, 51 La.Ann. 303, 25 So. 66 (La.1899); Morneau v. American Oil Company, supra, [reaffirming Richardson v. Zuntz, 26 La.Ann 313 (La.1874)]; McVay v. Ellis, 148 La. 247, 86 So. 783 (La.1921); Posey v. Fabre, 369 So.2d 237 (La.App. 4th Cir.1979), writ den. 371 So.2d 1344 (La.1979).
This court has already held that the epithet "motherfucker" is one of the most offensive and is included among "... words which are calculated to provoke and arouse to the point of physical retaliation...," Posey v. Fabre, supra, at p. 240. We determined that the use of those words supported a mitigation of the plaintiff's damage award.
However, since the adoption of comparative fault the Second Circuit has held that the principles of Civil Code Article 2323 is a more appropriate approach rather than the concept of mitigation. Robinson v. Hardy, 505 So.2d 767 (La.App. 2nd Cir. 1987), writ denied 508 So.2d 825 (La.1987); Harris v. Pineset, 499 So.2d 499 (La.App. 2nd Cir.1986), writ denied, 502 So.2d 114 (La.1987). We agree with that reasoning. Where the words or action of a plaintiff in a civil battery action are sufficient to establish provocation which would warrant a mitigation of damages, the court should apply comparative fault principles based on the facts and circumstances of the case. Thus, the guidelines established by the Supreme Court in Watson v. State Farm Fire and Casualty Company, 469 So.2d 967 (La.1985) would be applicable in determining plaintiff's fault, if any. Those factors include:
1) Whether the conduct resulted from inadvertence or involved in an awareness of danger;
2) How great a risk was created by the conduct;
3) The significance of what was sought by the conduct;
4) The capacities of the actor, whether superior or inferior; and,
5) Any extenuating circumstances which might require the action to proceed in *1018 haste, without proper thought. Watson, supra at 974.

After review of the record, and for the following reasons, we are satisfied that Jones' actions warrant a finding of fault on his part. However we find clear error in asserting his fault at 90%.
Jones admitted that Thomas at no time used profanity towards him. Even after Logan ordered Jones to stop arguing and return to work, he continued in his attempt to verbally provoke Thomas by levelling some of the most offensive profanities and threats towards Thomas for approximately ten minutes, even after Thomas walked away.
In addition, Ron Foreman, the Commission director, testified that Jones had a history of fighting and, in fact, had been suspended from work for fighting in the past. Foreman testified that in 1975 and 1978, Jones was cited for having a "lack of emotional control in dealing with others." In the instant case, Thomas testified that he never married, lived next door to his mother and was very close to her. He stated that he knew of Jones' violent nature and reputation at the time Jones threatened to kill his mother and burn his house and took those threats seriously. This is when he lost control and struck Jones.
Therefore, the evidence is sufficient to justify a finding of fault on the part of plaintiff. However, because the evidence also shows that the provocation, although serious, offensive and demeaning, was verbal only, we believe plaintiff's fault should be reduced from 90% to 50%. Jones made no overt acts or threatening gestures towards Thomas. Relying on the well established principle of law that words alone cannot and should not justify a battery, we hold that the trial court abused his discretion in finding Jones 90% at fault. We do not intend to imply that words may never result in more than 50% of the fault. However, under the facts and circumstances of this case, we deem 90% excessive, and 50% appropriate.
ASSIGNMENT OF ERROR 2:
Jones asserts that the Comprehensive General Liability insurance policy issued to the Commission by Puritan covers injuries sustained by an employee because of the intentional tort of another employee. We disagree.
Puritan issued a policy of Comprehensive General Liability insurance to the Commission providing coverage for certain described risks from December 11, 1979 to December 11, 1980.
The policy provides:
"I COVERAGE ABODILY INJURY LIABILITY
COVERAGE BPROPERTY DAMAGE
The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
A. Bodily injury or
B. Property damage
to which this insurance applies, ...
EXCLUSIONS
This insurance does not apply:

* * * * * *
(i) to any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;
(j) to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured or to any obligation of the insured to indemnify another because of damages arising out of such injury; but this exclusion does not apply to liability assumed by the insured under an incidental contract;"
Specifically, Jones argues the applicable exclusions are ambiguous because they are silent as to intentional tort coverage between employees and therefore should be construed against Puritan in favor of coverage. In Franklin v. J.A. Jones Construction Company, 391 So.2d 1321 (La. *1019 App. 4th Cir.1980),[3] this court interpreted the identical exclusions and determined they were clear and unambiguous and did not apply to injuries to employees. We stated:
"We do not agree with the plaintiff that the above endorsements and provisions of the subject contract are, at least, ambiguous and therefore must be construed against the insurer. Rather, we hold that the terms of the policy are clear and unambiguous and refer to the case of Mauterer v. Associated Indemnity Corp., 332 So.2d 570 (La.App. 4th Cir. 1976), wherein this court noted the applicable law at page 572:
... When the terms of the policy are clear and unambiguous they form the law between the parties. RCC article 1901 and 1945; Jennings v. Louisiana and Southern Life Insurance Co., 280 So.2d 291 (La.App. 1st Cir.1973). The words in an insurance policy are to be understood in the common ordinary sense without resort to grammatical rules. RCC Article 1946; Schwegmann Bros. Giant Supermarket v. Underwriters at Lloyd's, London, 300 So.2d 865 (La.App. 4th Cir.1974)." at. p. 1323.
Thus, applying the same reasoning as in Franklin, supra, we find no merit in Jones' contention that the exclusions are ambiguous. An understanding of the policy in the common ordinary sense supports a finding that the language "to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured, ..." means any bodily injury whether as a result of negligence or an intentional tort by a third party or a co-employee.
The purpose of a comprehensive general liability policy is to provide coverage for injuries to third persons onlythis being the very reason for the exclusions. This conclusion is supported by the testimony of insurance expert, Robert Breeden. He testified that the type of injury sustained by Jones is covered by a Worker's Compensation/Employer's Liability policy and is never covered by a Comprehensive General liability policy which is the very reason for the exclusions in question. We find no error in the trial court's ruling that the injury sustained by Jones is not covered by the Comprehensive General Liability policy.[4]
For the foregoing reasons the judgment of the trial court is amended to reduce Jones' fault to 50%. In all other respects, the judgment is affirmed.
AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[1] In 1982, the trial court dismissed Jones' claims against the Commission and the City pursuant to an exception of no cause of action finding that under the Worker's Compensation Law, Jones could sue Thomas for the intentional tort but had no cause of action against the Commission and the City under a theory of respondeat superior. Jones appealed. This court affirmed. However, the Louisiana Supreme Court reversed and held that an employer may be vicariously liable for the intentional torts of an employee against a co-employee under certain circumstances. The court did not rule on the merits of the instant case but addressed only the legal issue of "... whether the employer can ever be held vicariously liable, under any facts and circumstances ..." (emphasis in original). Jones v. Thomas, 413 So.2d 180 (La.App. 4th Cir.1982), writ granted, 420 So.2d 162 (La.1982), rev'd, 426 So.3d 609, 610 (La.1983).
[2] The witnesses, with the exception of Jones, testified that some of the verbal abuse Jones levelled at Thomas consisted of calling him a "black motherfucker" threatening to kick his "black ass" and threatening to kill his mother and burn down his house.
[3] Isaac Franklin appealed a summary judgment in the trial court dismissing defendant Aetna Casualty and Surety Company from his suit for personal injuries sustained during the course and scope of his employment with J.A. Jones Construction Company. On the date of the accident there was in effect a comprehensive liability policy of Aetna which contained the identical exclusions in the instant case. The issue before this Court was whether the liability policy provided coverage for an employee's [Franklin's] injuries.
[4] One reason we discuss this issue is because the City has not appealed the finding of vicarious liability on their part, thus the applicable policy exclusions had to be addressed. However, this opinion should not be cited as precedent for the proposition that an employer is to be held vicariously liable for the intentional torts of its employee.